UNITED STATES BANKRUPTCY COURT
NORTHORN DISTRICT OF NEW YORK

In re:

    Daniel Roche and
    Susan Roche,

               Debtors.

Case No. 09-30332
Chapter 13

Appearances:

Steven R. Dolson, Esq.
Attorneys for Debtor
500 South Salina Street
6th Floor
P.O. Box 1279
Syracuse, New York 13201-1279

Karen E. Menter, Esq.

Melvin & Melvin, PLLC
Attorneys for M&T Trust Co.
217 South Salina Street
Suite 700
Syracuse, New York 13202

Louis Levine, Esq.

Hon. Margaret Cangilos-Ruiz, U.S. Bankruptcy Judge

## MEMORANDUM-DECISION

Daniel and Susan Roche ("Debtors") filed this chapter 13 case under the United States Bankruptcy Code[1] on February 17, 2009. In their plan filed on the same date, the Debtors propose to avoid certain judicial liens pursuant to Code section 522(f) as impairing their homestead property located at 3429C East Lake Road, Skaneateles, New York ("Property"). The Property, which Debtors own as tenants-by-the-entirety, is valued on their schedules at $434,400.00 and claimed as exempt. The Debtors' plan, by omission, also proposes to treat mortgage liens held by Manufacturers and Traders

---

[1] 11 U.S.C. §§ 101–1532 (2009) ("Code").

1

Trust Company ("M&T") as unsecured. M&T objected to confirmation, the hearing on which has been adjourned to August 11, 2009.

On May 18, 2009, Debtors filed a separate motion to determine the status of the third and fourth mortgages held by M&T against the Property under Code section 506(a), reclassify the two mortgages held by M&T as unsecured pursuant to *In Re Pond*, 252 F.3d 122 (2d Cir. 2001), and avoid the judgment liens held by Keybank National Association ("Keybank") and M&T (Doc. No. 27). M&T filed opposition (Doc. No. 30). Following an initial hearing on June 16, 2009, the court set an evidentiary hearing on the value of the Property to determine whether or not Debtors are entitled to the relief requested. The evidentiary hearing proceeded on July 21, 2009. This memorandum-decision incorporates the court's findings of fact and conclusions of law as permitted by Federal Rule of Bankruptcy Procedure ("FRBP") 7052, made applicable by FRBP 9014.

*Valuation Evidence*

The Debtors' first witness was Renee Dwyer, a real estate agent currently with RE/MAX, who exclusively deals in property in the Skaneateles area and has lived in the Village of Skaneateles and worked in real estate for the past eight to nine years. Ms. Dwyer has prepared some fifty comparative market analyses over the past three years and prepared a comparative market analysis of the subject Property ("CMA") two weeks prior to the Debtors' filing. The CMA, dated February 3, 2009, was admitted into evidence. The subject Property is a 4 Bedroom, 2 1/2 bath house comprised of 2,632 square feet that was built in 1978. It is situated on a private roadway in the Town accessed from East Lake Road and shares, with three other adjacent properties, rights to 38 feet of lakefront that is 250 to 300 feet away from the Property. Ms. Dwyer toured the inside of the Property and utilized four comparables, which she selected based upon their location, similar lake frontage, amenities and recent sales. Sales of the comparables closed from 6 to 27 months prior to the filing of Debtors' petition. Ms.

Dwyer testified that the timing of comparable sales selected was not too old, as there are not many transactions in Skaneateles, which she described as a unique market. She further testified that the real estate market had been stronger a couple of years ago and that there has been a ten per cent decline in the Skaneateles market from a year ago. She ascribed a value of $434,400.00 to the Property and indicated that would be the price at which it should be listed were the property for sale.

Debtor Daniel T. Roche was the second witness.[2] He testified that the original house on the Property was built as a camp and that the current structure was built around the camp. Mr. Roche further testified that due to the way additions were made, the current structure required considerable work, which he started on three years ago when he purchased the Property. The house had structural problems and he proceeded to tear out the walls, replace all the windows, renovate the kitchen, correct the rotted sill plate and put in hardwood floors in the upstairs, second floor living area. He testified that the house is livable but unfinished—the bedrooms on the first level still need hardwood floors, the family room has exposed studs with no drywall and further excavation work is needed. He testified that he believes the fair market value of the Property as of the filing date to be $434,000.00 and that more work remains to be done to the Property, requiring an additional investment of from $50,000.00 to $100,000.00. Debtor Susan Roche was the final witness for the Debtors. She testified that $434,000.00 was a fair value for the property and supplemented her husband's testimony as to needed upgrades to the Property by testifying that the bathrooms also require additional work.

M&T called as its witness Robert Ellis, Jr., a licensed residential real estate appraiser who has been a staff appraiser with Copeland & Copeland in Syracuse since 1994 and has performed approximately 695 appraisals in the past 3 years in Onondaga County, 85 of which were estimated to involve property in Skaneateles. Mr. Ellis testified that he performs work for banks, individuals and

---

[2] M&T objected to having either of the two Debtors testify as to the value of their property or as to its physical condition. In reliance upon *In re Karakas*, 2007 Bankr. LEXIS 1578 at *18 -*19 (Bankr. N.D.N.Y. May 3, 2007) and the cases cited therein, this court overruled M&T's objection and allowed in the testimony of both Debtors.

estates. He testified that three of the most important factors in valuing property in Skaneateles were proximity to Skaneateles lake, proximity to the Village and lake rights. Mr. Ellis was requested to do an appraisal of the Property based upon a visual inspection of the exterior only. He valued the property at $540,000.00 as of April 24, 2009, as reflected in his Summary Appraisal Report which was received into evidence as Creditor's Exhibit "F." Upon inquiry as to whether his opinion of value was altered by hearing the other testimony, he responded that the "completeness of the first floor concerns me" but concluded "No." Mr. Ellis had previously appraised the Property on three earlier occasions: in 2008 and back in 1997 and 2005 in connection with mortgage financing. M&T also submitted into evidence the appraisal prepared by Mr. Ellis dated January 31, 2008, in which he valued the Property at $622,000.00.

*Liens Against the Property*

At the time of filing, four mortgages encumbered the Property: Community Bank's first mortgage of $261,748.00, Solvay Bank's second mortgage of $179,019.93 and M&T's two mortgages, one for $104,000.00 and the other for $50,000.00. In addition, Onondaga County holds a lien for $20,693.36 against the property based on a tax warrant. Two judicial liens encumber the property: a judgment lien of M&T filed May 16, 2008 in the amount of $502,900.81 plus interest and the Key Bank judgment lien of $21,011.76 filed on November 17, 2008.

*Discussion of the Issues*

Section 522(f) of the Bankruptcy Code permits a debtor to "avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption…if such lien…is a judicial lien…" 11 U.S.C. § 522(f). The section also states in pertinent part:

> a lien shall be considered to impair an exemption to the extent that the sum of—
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

4

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A).

Keybank's judicial lien and M&T's judicial lien attach to the value of the Property that exceeds the value of all other liens on the Property plus Debtors' homestead exemption of $100,000.00. The other liens as noted above against the Property are Community Bank's mortgage lien of $261,748.00, Solvay Bank's mortgage lien of $179,019.93, M&T's mortgages of $104,000.00 and $50,000.00 and the Onondaga County tax lien of $20,693.36, resulting in total liens of $615,461.29. Adding the exemption amount of $100,000.00 to the total liens equals $715,461.29. Keybank's judicial lien and M&T's judicial lien attaches to any value of the Property above this amount. However, since no valuation of the Property exceeded $715,461.00, no equity exists to which either judicial lien can attach. Accordingly, both judicial liens are avoided in their entirety.

Code section 522(a)(2) defines value as "fair market value as of the date of the filing of the petition." Debtors filed their petition on February 17, 2009. M&T's appraisals conducted by Mr. Elllis valued the Property respectively as of January 31, 2008 and April 24, 2009; Debtors' CMA prepared by Ms. Dwyer valued the Property as of February 3, 2009. The court finds Debtors' CMA and M&T's appraisal dated April 24, 2009 sufficiently contemporaneous with the petition date to be acceptable as evidence of value of the Property. The court now must examine valuation as it relates to determining the secured status of M&T's mortgages. Pursuant to *In re Pond*, a debtor may strip off a wholly unsecured mortgage lien in a chapter 13 proceeding. 252 F.3d at 126 (2d Cir. 2001). Senior to M&T's mortgages are Community Bank's mortgage of $261,748.00, Solvay Bank's mortgage of $179,019.93 and Onondaga County's tax lien of $20,693.36. These encumbrances total $461.461.29. Accordingly, if the court finds the value of the Property to be less than $461,461.29, then both of M&T's mortgages can be stripped.

5

Ms. Dwyer defended the use of her comparables as sufficiently similar to the subject Property. She rejected finding a higher value for the property based, in part, on the nature of the shared lake rights. The court found her testimony to be very credible and accepts the premise that a party ready to invest more than the $434,400.00 ascribed to the Property would want a more private arrangement as to lakefront access.

On the other hand, Mr. Ellis' most recent appraisal was done without knowledge of the existing condition of the interior. His statement that the testimony regarding the interior condition of the house would not alter his assessment of value was somewhat belied by his frank expression of concern regarding the relative incompleteness of the first floor. Despite Mr. Ellis' expertise, his past involvement in appraising the Property as recently as 2005 to support mortgage financing for M&T suggests that he is more than slightly biased in arriving at a value that is not skewed from his past valuations. This is the case despite the fact that his own valuation of the Property dropped by $122,000.00 from 2008 to 2009.

After carefully considering the testimony given at the hearing, the court finds Ms. Dwyer's testimony persuasive as to the value of the Property and the CMA valuation more in line with the current housing market in Skaneateles. The court therefore finds that the Property had a value of $434,400.00 as of the petition date.

Accordingly, M&T's mortgages for $104,000.00 and $50,000.00 are deemed unsecured. Counsel for the Debtors may submit a separate order avoiding Keybank's judicial lien, M&T's judicial lien and reclassifying M&T's mortgages in accordance with this decision.

So ordered.

Dated: August 10, 2009
Syracuse, New York

Hon. Margaret Cangilos-Ruiz
U.S. Bankruptcy Judge